RASOR *v.* MOTT.

1. WILLS—HUSBAND AND WIFE—ELECTION OF WIFE—STATUTES.
Under section 8935, 3 Comp. Laws (3 Comp. Laws 1915, § 11667), where a devise of a life estate in land which had been the homestead of deceased and was appraised at more than $1,500, is made to the wife of deceased, the wife has the right to accept or reject the provision.

2. SAME—ELECTION OF WIFE—DOWER.
The wife elected to take her dower rights where, upon her petition as administratrix, the land was sold to pay debts, subject to her dower rights.

3. ESTATES OF DECEDENTS—HOMESTEADS.
A widow cannot acquire a homestead in land occupied by decedent as a homestead during his life free from decedent's debts where there are no minor children of a decedent and his widow.

Error to Gratiot; Dodds, J., presiding. Submitted April 6, 1917. (Docket No. 87.) Decided May 31, 1917.

Ejectment by King Rasor and another against Cassius M. Mott. Judgment for defendant. Plaintiffs bring error. Affirmed.

*Carl H. McLean (O. L. Smith,* of counsel), for appellants.

*O. G. Tuttle,* for appellee.

The cause was tried by the court, findings of fact and conclusions of law were filed, and plaintiffs' request for certain findings of law was filed and was considered by the court. Judgment for defendant for costs was entered. The findings are:

"In this action of ejectment the plaintiff seeks to recover possession of the northwest quarter of the north-

east quarter of section 36 in township 10 north, range 3 west, in the county of Gratiot, State of Michigan.

"(1) On the 28th day of May, 1894, Isiah Hatfield died testate, seised of the above-described land, to wit: The northwest quarter of the northeast quarter of section 36 in township 10 north, range 3 west, in said county of Gratiot, leaving him surviving his widow, Polly Hatfield, and his daughter, Tressey Omeida Rasor. The widow was at that time 74 years of age, and the daughter 33 years of age. The latter was married to one James Rasor, and by him was the mother of the plaintiffs. The said King Rasor was at the time of his grandfather's (Isiah Hatfield's) death about 5 years of age, and the said Keoka (Rasor) Bassett was about 14 years of age. The said land was the homestead of the said Isiah Hatfield and his wife at the time of his death.

"The will was as follows:

"'The last will and testament of Isiah Hatfield, of the township of Newark, in the county of Gratiot and State of Michigan:

"'I, Isiah Hatfield, considering the uncertainty of this mortal life, and being of sound mind and memory, do make, publish and declare this to be my last will and testament in manner and form following:

"'First. I give, devise and bequeath unto my wife, Polly Hatfield, all of my real estate of whatever kind or nature and wherever the same may be, she to have and hold the same during her natural life only; and then at her death the same shall go to and belong to my daughter, Tressey Omeida Rasor, during her natural life, and at her death the same shall go to her heirs, to be equally divided share and share alike (excepting James Rasor, her present husband, if he shall in any event become an heir at law of her, the said Tressey Omeida Rasor, as I do not desire him to take or have anything by this my will).

"'Second. I give and devise to my wife, Polly Hatfield, all of my personal property absolutely, and in case there should be any of such personal property unsold at her death, I desire my daughter, Tressey Omeida Rasor, to have the same.

"'Third. Hereby revoking all former wills by me made.

"'In witness whereof I have hereunto set my hand and seal this 4th day of August, A. D. 1887.

"'ISIAH HATFIELD.  [L. S.]

"'The above instrument, consisting of one sheet, was now

here subscribed by Isiah Hatfield, the testator, in the presence of each of us, and was at the same time declared by him to be his last will and testament, and we at his request sign our names hereto as attesting witnesses.

"'PHILIP FRITZ, Newark, Mich.
"'BYRON H. SAWYER, Ithaca, Mich.'

"(2) On the 31st day of May, 1894, said Philip Fritz, one of the subscribing witnesses to said will, petitioned the probate court for the county of Gratiot for the probate thereof, and an order of hearing said petition was duly made by said probate court, fixing the 2d day of July, 1894, as the day of hearing said petition, and ordering due publication to be made of said order.

"(3) On the 2d day of July, 1894, proof of publication of said order of May 31st was made and hearing was had, and said will duly admitted to probate, and therein it was ordered, adjudged and decreed:

"'That said instrument be approved, allowed, established, and have full force and effect as the last will and testament of said deceased, and that the same be recorded as required by law, * * * that the execution of said will be committed, and the administration of the estate of said deceased be granted to said Polly Hatfield, who is ordered to give bond in the penal sum of $2,500, with sufficient sureties, as required by the statute in such case made and provided; and upon the same being duly approved and filed that letters testamentary do issue in the premises.'

"And thereupon on the same day, said bond having been filed and approved, letters testamentary, with the will annexed, in the regular form, was issued to said Polly Hatfield, among the provisions of which is the following:

"'And whereas, at a session of said probate court held at Ithaca, in said county, on the 2d day of July, in the year one thousand eight hundred and ninety-four, the last will and testament of said deceased (a copy whereof is hereto annexed) was duly proved, approved and allowed, wherein you are appointed executor thereof, * * * whereby the power of committing administration and full disposition of all and singular the goods, chattels, rights, credits, and estate whereof the said deceased died possessed, in the State of Michigan, and also the hearing,

examining, and allowing the account of such administration doth appertain unto me, and you have given a bond in the premises which has been duly approved and filed as required by law in that behalf: Now, therefore, trusting in your care and fidelity, I do by these presents, commit unto you, the said Polly Hatfield, full power and authority to administer and faithfully dispose of according to law and the will of the said testator, all and singular the goods, chattels, rights, credits, and estate of said deceased within the State of Michigan which shall at any time come to your possession, or to the possession of any other person for you, and to ask, gather, levy, recover, and receive all the goods, chattels, rights, credits, and estate whatsoever of said deceased which to him while he lived and at the time of his death did belong, and to pay and discharge all debts, legacies, and charges chargeable on the same, or such dividends thereon as shall be ordered and decreed by said court, hereby requiring you to make and return to said court, within 30 days, a true and perfect inventory of all the goods, chattels, rights, credits, and real estate of said deceased which shall come to your possession or knowledge, or to the possession of any other person for you, and also to render a just and true account of your administration to said court annually at any time when required by said court, and to perform all orders and decrees of said court by you to be performed in the premises.'

"In the proceedings thereafter said Polly Hatfield is described by the probate court in orders made, and by herself in papers signed by her, sometimes as executrix, and sometimes as administratrix, and counsel for both parties in introducing testimony and in argument have used the term indiscriminately.

"(4) On the 2d day of July, 1894, two appraisers were appointed and took the required oath, and on the 10th day of July, 1894, made and filed their report with the probate court and their inventory showed the appraised value of the personal property to be $233.60, about one-third of which was household furniture, and all said land which was all the real property of said estate to be of the value of $2,000. This land was incumbered by a mortgage of $650, which had been executed by both Isiah Hatfield and his wife, Polly Hatfield, aforesaid. There were other valid claims against the estate which were afterwards, on October 1, 1894, and on January 2, 1895 (the days

fixed for hearing claims), allowed at $990, including said mortgage, and subsequently the further amount of $122, amounting in all to $1,112.

"(5), On the 7th day of March, 1895, the administratrix, Polly Hatfield, petitioned the probate court for license to sell said real estate to pay the said debts against the estate, reciting:

"'That the personal estate of said deceased that had come into her hands amounts to the sum of $233.60, of which a small portion only remains undisposed of.

"'Your petitioner further represents that, as far as can be ascertained by her, and as she is informed and verily believes, the just debts outstanding against said estate amount to the sum of about $1,100, and that the charges and expenses of managing and administering said estate, including future probable charges and expenses, will amount to the sum of $50.

"'Your petitioner further represents that it is necessary, for the purpose of paying debts, charges, and expenses, to raise the sum of $450 besides the mortgage indebtedness of $650 or thereabouts, by the sale of the following described real estate, or some part thereof, of which the said Isiah Hatfield died seised and possessed. The description, condition, and value of each parcel and of the whole of the real estate of which said deceased died seised and possessed, according to the information and belief of your petitioner, are as follows, viz.: The northwest quarter of the northeast quarter of section thirty-six (36) in township ten (10) north of range three (3) west of Gratiot county, Michigan. Your petitioner further represents that the names and residences of the next of kin and heirs at law of said deceased, and other persons interested in said estate, as your petitioner is informed and believes, are as follows, viz.: Polly Hatfield, widow, age 74, Pompeii, Mich.; Ross King Rasor, grandson, age 6, Ashley, Mich.; Lela Keoka Rasor, granddaughter, age 15, Ashley, Mich.

"'Wherefore your petitioner prays that she may be authorized, empowered, and licensed to sell the whole of the real estate hereinbefore described, with the hereditaments and appurtenances, or so much and such part thereof as the court shall deem necessary, and most for the benefit of all persons interested, for the purpose of paying the debts, expenses, and charges aforesaid, according to the provisions of the statute in such case made and provided.'

196—Mich.—29.

"The said Tressey Omeida Rasor, daughter of the said Isiah Hatfield, and wife, Polly Hatfield, and mother of plaintiffs, had died previous to the filing of said petition. On the 7th day of March an order was made by the probate court fixing the 8th day of April, 1895, as the day of hearing said petition, and ordering that notice be given to the interested parties by publishing a copy of said order for three successive weeks in the Gratiot Journal, a newspaper printed and published in said county, of which publication the proof was filed April 10, 1895. On the said 8th day of April the hearing was adjourned to April 20th. On the 20th day of April James Rasor, father of plaintiffs, appeared with his attorney, E. McCall, to stop the sale because he thought the property belonged to his children, and at their request the hearing was adjourned to the 1st day of May, 1895. The order of the court made on that occasion was as follows:

" 'This being the time and place assigned by this court for hearing the executor of the estate of said deceased, praying that she be licensed to sell the real estate of said deceased to pay debts, now comes into court James Rasor in person and by his attorney, E. McCall, and asks that the case be adjourned to May 1st next.'

"(6) On the 1st day of May, 1895, hearing was had upon said petition, and license in the regular form, was granted to the administratrix, Polly Hatfield, to sell said land for the purpose of paying claims against the estate. On the same day the bond of the administratrix with a penalty of $3,000 was filed and approved, and the oath before sale made and filed. The license to sell ordered the sale to be made,—

" 'subject to all incumbrance by mortgage or otherwise existing at the time of the death of said deceased, or at the time of said sale, and also subject to the right of dower, and the homestead rights of the widow of the deceased therein.'

"On the same day notices that said land would be sold on the 13th day of July, 1895, was given by said Polly Hatfield and was published in said Gratiot Journal, and the same was published for six successive weeks, and on the 31st day of May, 1895, three like notices of sale were given by her and posted in the

township in which said land is situated. The notices all contained the same provision as the license, to wit:

" 'Subject to all incumbrance by mortgage or otherwise existing at the time of the death of said deceased, or at the time of said sale, and also subject to the right of dower, and the homestead rights of the widow of the deceased therein.'

"(8) On the said 13th day of July proof of publication and posting of said notice of sale was filed and sale was made to Edgar W. Martin for the sum of $600. On the 17th day of July the administratrix filed her report of sale, which was in the regular form, reciting the same was made,—

" 'subject to the mortgage against said land and subject to the dower and homestead rights of the widow of said deceased to Edgar W. Martin, of Fulton, in said county.'

"After said report was filed and recorded both the original and the record in the office of the register of deeds was changed so as to read as follows:

" 'Subject to the rights of the widow of said deceased under the will of said deceased to Edgar W. Martin, of Fulton, in said county.'

"This change was made without the knowledge of the probate judge, and was not made by the administratrix (who could not write) nor her attorney, and it does not appear by whom or how long after filing and record the alteration was made.

"On the same day the sale was confirmed and the deed ordered by the probate court, and the deed was executed and delivered to the purchaser by the administratrix, and on the same day placed upon record. Said deed was in words and figures as follows:

" 'Know all men by these presents that I, Polly Hatfield, as executrix of Isiah Hatfield, deceased, pursuant to an order of the judge of probate for the county of Gratiot and State of Michigan, made at a session of said probate court held at the probate office in the village of Ithaca, in said county and State, on the 1st day of May, one thousand eight hundred and ninety-five, authorizing, empowering, and licensing me to sell at public auction in conformity to the statute in such case made and provided sufficient of the real estate whereof said Isiah Hatfield

died seised, for the purpose as in said order mentioned, did sell at public auction held at the premises described, in the township of Newark, in the county of Gratiot, and State aforesaid, pursuant to legal notice, all the estate, right, title, and interest of said Isiah Hatfield of and in and to a certain real estate and premises, in said order set forth and hereinafter described, to Edgar W. Martin, he being the highest bidder thereto, which said sale was, by an order made by said judge of probate, on the 17th day of July, in the year one thousand eight hundred and ninety-five, duly confirmed, and I, the said Polly Hatfield, as said executrix, was directed and empowered to execute, acknowledge, and deliver a proper conveyance or conveyances of said real estate so sold, to the purchaser thereof, agreeably to the statute in such case made and provided.

" 'Now, know ye that, in pursuance of the said several orders and proceedings above referred to, and in consideration of the sum of $600 paid to me by the said Edgar W. Martin, the receipt whereof I do hereby acknowledge, I have sold and do hereby grant, sell, and convey unto said Edgar W. Martin, his heirs and assigns, forever, the northwest quarter of the northeast quarter of section number thirty-six (36) in town-. ship ten (10) north of range three (3) west, in Gratiot county, Michigan. To have and to hold the above-granted premises with the appurtenances to the said Edgar W. Martin, his heirs and assigns, forever. And I do hereby covenant with said Edgar W. Martin that I will warrant and defend the said granted premises, with the appurtenances, unto the said Edgar W. Martin, his heirs and assigns, forever, against the lawful claims and demands of all persons claiming by, from, or under Isiah Hatfield, but against no other persons, excepting one certain mortgage of $652, and interest since July 25, 1894, at 7 per cent.

" 'In testimony whereof I have hereunto set my hand and seal at Ithaca, in the county of Gratiot and State of Michigan, this 17th day of July, A. D. one thousand eight hundred ninety-five.

her

" 'POLLY  x  HATFIELD, [L. S.]

mark

" 'Executrix of Isiah Hatfield, Deceased.

" 'Signed sealed, and delivered in presence of witnesses to mark:

" 'KELLY S. SEARL,

" 'J. LEE POTTS.'

"The records and files in the office of the probate judge do not show that any bond to pay the mortgage described in the deed was ordered by the probate court or given by the purchaser, Martin, but afterwards, on October 22, 1898, the same was paid and satisfied in full and discharged of record.

"(9) On the said 17th day of July the said Polly Hatfield executed and delivered to said Edgar W. Martin a quitclaim deed of all her rights to said land for a stated consideration of $500, the same reciting:

" 'This deed is made for the purpose of transferring to said Martin all the dower and homestead rights and all other title and interests of first party in and to said land.'

"This deed was placed upon record at the same time as the administratrix's deed. At the time of said sale the value of said land was from $1,700 to $1,800, and the amount paid by the purchaser besides said mortgage was $600 to her in her official capacity as administratrix and $500 to her personally. Between the day of making said sale and the execution and delivering of said deeds, to wit, July 15, 1895 (no written petition being of record or in the files), the said probate court made the following order:

" 'It appearing that the time limited for creditors to file their claims against said estate has expired, and it further appearing that James Rasor and Polly Hatfield have claims against said estate, and desire to file the same and have them established as legal claims against the estate of said deceased, it is therefore ordered and decreed, with the consent of the administratrix, that said claims be filed in said court, and that the time for hearing same be fixed for Saturday, the 20th day of July, 1895, at 1 o'clock in the afternoon.'

"On the 20th day of July the claims presented by the said Rasor were disallowed by the probate court.

"(10) On the 1st day of October, 1895, the administratrix filed her final account, and the same was allowed on the 23d day of November, and the administratrix discharged. On the 26th day of November, 1900, the said Edgar W. Martin and wife executed and delivered a warranty deed to the defendant herein, and the defendant paid therefor a consideration of $1,500. Said defendant had no notice of any of the

alleged defects of the probate proceedings claimed by plaintiffs, excepting such constructive notice as was given by the records. Said Martin and his grantee have been in continuous possession of said land since the said 17th day of July, 1895, and defendant is still in possession, claiming title.

"(11) At no time during the proceedings to sell said land was any guardian *ad litem* appointed by the court for either of the plaintiffs. No attempt was made to carry out the provisions of sections 9134, 9135, 9136, and 9137 of the Compiled Laws of 1897 (3 Comp. Laws 1915, §§ 14031-14034). The files and records do not show that the widow, Polly Hatfield, filed any express election in writing not to take under the will of her husband, except as appears by the proceedings in connection with the said sale, but she and her attorney and the probate judge all understood that she was taking under the statute and the proceedings were taken on that theory. The said Polly Hatfield died in March, 1914, before this action was commenced.

### "CONCLUSIONS OF LAW.

"Counsel for the plaintiffs have filed requests for conclusions of law, 17 in number. They are somewhat involved, being rather disconnected, in some instances several aiming at the same question from different angles. I have grouped them as best I can and have attempted to consider them in such a way as to cover, in this finding, the questions raised in the requests.

"As I gather from the requests and argument, the plaintiffs' counsel claims that the sale of lands made by the probate court to pay the debts of the deceased, Isiah Hatfield, in the administration of his estate, and under which defendant, through his immediate grantor, Edgar W. Martin, claims title, was void, and that judgment should be entered for plaintiffs for the following reasons:

"(1) Because the widow, Polly Hatfield, not having elected not to take under the will, the sale cannot be made subject to her dower and homestead interests. Inasmuch as the said Polly Hatfield within the year granted for her election acted upon and in pursuance of the license to sell, subject to the widow's dower,

and herself gave notice by publication and posting, which notices contained the same clause, acts inconsistent with her asking under the will, and consistent only with the opposite theory, which was acted upon by the probate judge, I conclude that such acts amounted in law to a valid election to take under the statute.

"(2) Because the plaintiffs, the remaindermen, under the provisions of the will, were minors and no guardian *ad litem* was appointed to protect their interests. I think that the proceedings were not void because the guardian *ad litem* was not appointed, but voidable only at the minor's election under proper proceedings, and that the omission cannot be taken advantage of in this action of ejectment.

"(3) Because no proceedings were taken under the statute (Comp. Laws of 1897, §§ 9134-9137, 3 Comp. Laws 1915, §§ 14031-14034), the homestead interest being involved. The defendant's counsel claims that this is not a case that comes under the requirements of this statute, but, if it is such a case, I think the failure to take action was not such an omission as to render the subsequent proceedings and sale void. As I see it, the question is involved in and controlled by the decision of our Supreme Court in *Brown* v. *Hannah,* 152 Mich. 33 (115 N. W. 980), I conclude that it was at most an irregularity that does not form the basis for collateral attack.

"(4) Because no bond was demanded by the probate court nor furnished by the purchaser at the probate sale to pay the mortgage then covering the land sold. Even if it would be conclusively held that no bond was filed by the purchaser at the probate sale because the records and files do not show it, I think it would not be controlling in this case, inasmuch as the mortgage was actually paid in full.

"(5) Because by the proceedings as taken the entire mortgage incumbrance was thrown on the remaindermen, whereas the homestead and dower interest should have borne a portion even if the sale had been otherwise valid. I do not think the record shows such was the fact, but in any case the proceedings are not subject to collateral attack for that reason, and I conclude the question cannot be litigated in this case.

"(6) Because the sale was made subject to the life estate of the widow contrary to the order of the court. The same was not made contrary to the order of the court and I therefore conclude that this request is without force.

"(7) Because the facts in the case do not bring it within the provisions of the statute. 3 Comp. Laws, § 9129 (3 Comp. Laws 1915, § 14024). I think that the facts bring the sale within the provisions of the statute (section 9129, of the Compiled Laws of 1897), and that as all the requirements of that statute have been substantially complied with ejectment will not lie.

"(8) That the plaintiff Keoka is not precluded from joining in this action because more than 5 years had elapsed between the time she was 21 years of age and the time of commencing this action. The plaintiff Keoka Bassett became 21 years of age in 1901. Inasmuch as Polly Hatfield did not take under the will, she had no title to the land in question. She had no life estate except her dower, and the plaintiff Keoka Bassett could have taken proper proceedings to set aside the sale at any time previous to 1906. I conclude that the statute of limitation could be invoked after that time.

"It appears that at the time of the death of Isiah Hatfield the personal estate was worth $233.60, one-third of which was household furniture. It was therefore within the allowance to the widow, whether she took under the will or under the statute, and could not be considered as a part of the assets of the estate nor liable to be used to pay debts of deceased. A year later, at the time of the proceedings to sell, this had all been used by the widow 'except a small portion.'

"The land in question, which was all the real estate, was appraised at $2,000, but at the time of the probate sale it was worth $1,700 to $1,800, and the mortgage thereon was $650. The other debts against the estate amounted to $467.00 besides the expenses of administration. The purchaser at the probate sale paid $1,750, including the mortgage and the $500 he paid the widow. Later he sold it to defendant for $1,500. It is not denied but that the $1,100 cash paid by the purchaser, plus the mortgage, was the full value

of the land. The actual wrong to the plaintiffs, if any, consisted in allowing Polly Hatfield as 'widow' to appropriate too much, and Polly Hatfield as 'administratrix' too little, of the proceeds of said sale. Whatever wrong was done could have been, and perhaps can still be, corrected in appropriate proceedings, but the rule is a wise one that will not allow such sales to be attacked collaterally in ejectment, where a recovery by plaintiffs as herein claimed would give them the estate clear of the debts to which it was subject."

Exceptions to the findings were filed, one of them being that the facts found do not support the judgment, and the assignments of error, 20 in number, are based upon the said exceptions. No finding of fact is disputed.

Appellants state the question presented in these words:

"Briefly, the question in this case is the legal effect of an attempted sale of homestead lands, worth less than $1,500, made subject to homestead interests, and made contrary to all the provisions of the Amendment Act of 1887, where the widow did not comply with the statute in electing to claim a homestead (not to' take under the will), and sold said so-called homestead interest, not as trust property, as required by the statute, but as her individual property. The only persons interested whose interests were sold were minors, for whom guardians *ad litem* were not appointed, the lands also being sold subject to a mortgage, without requiring a bond from the purchaser as required by section 9109, 3 Comp. Laws (3 Comp. Laws 1915, § 14019) ; all proceedings and acts being matters of public record. It was the contention of the plaintiffs at the trial that for each of these causes, and particularly when considered collectively, the executrix and widow's sales were void."

OSTRANDER, J. (*after stating the facts*). I am of opinion that the court below reached the right conclusion, and that the judgment should be affirmed. There was a devise to the wife of a life estate in land,

which land had been the homestead of the deceased and was appraised at more than $1,500. She had the right to accept or to reject this provision made for her. 3 Comp. Laws, § 8935 (3 Comp. Laws 1915, § 11667). It is a fair conclusion from what she did that she elected to be endowed of the land. It was, upon her petition, sold, subject to her dower right. How she acquired a homestead right in the land I do not understand. There were no minor children of deceased and herself. There was a child, a daughter, mother of the plaintiffs. In such a case the Constitution seems not to have secured to the widow a homestead in lands of her deceased husband. But I am not troubled by the fact that the land was sold subject to her dower *and homestead* right or that her quitclaim deed purported to be executed and intended "for the purpose of transferring * * * all the dower, and homestead rights and all other title and interests of first party in and to said land," because the enumeration of these rights may be said to merely indicate a purpose to cover any and all possible rights, and not a purpose to assert that all enumerated rights existed. No one sought to save a homestead, to define or value a homestead. The land was sold to pay debts. The debts existed and all rights created by the will were subject to be defeated by a sale of the land for their payment. Probably the widow received too much, proportionally, for herself, and too little for the estate. But the sale, upon this record, was not void. This is enough to defeat plaintiffs.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.